Case No. 14-3037 Joseph Platt, et al. v. Board of Commissioners, et al. Oral Argument Not to Exceed 15 Minutes per Side Kurt Hartman for the Appellant Good morning, may it please the Court. Kurt Hartman on behalf of the Appellants. I'm going to reserve four minutes for rebuttal, Your Honor. Since 1851, judges in the State of Ohio have been elected. And for the better part of those 163 years, those who seek election to judicial office have had no restrictions imposed upon their exercise of core political speech that other candidates did not have. However, it's been a recent phenomenon during the past few decades where sitting judges, through the adoption of judicial codes, have started to impose restrictions upon the exercise of that speech by those who might challenge them to office. And really what we have here is what the Supreme Court just earlier this year in McCutcheon indicated that those who govern should be the last people to help decide those who should govern. In other words, what we have here is that the judges, the State of Ohio, through the adoption of the judicial code and imposing it against non-sitting judicial candidates, are basically trying to say that someone should behave as a judge before they are a judge and may never be a judge. But this case falls squarely within the admonition that Justice Kennedy in the White case clearly has said that the state may not regulate the speech of candidates because they are candidates. Could I interrupt you for a second without throwing you all the way off here to ask you essentially a standing question? With the availability of the internet, that sometimes is dangerous for us. So we did go online to see if we could find whether Platt actually ever did run for anything. And I'm not sure we're searching it correctly, but so was he actually a candidate? He did not run for candidacy in 2014. What happened is in June of 2013, Mr. Platt filed and authorized the formation of the Platt Judicial Campaign Committee. That act made him a quote-unquote judicial candidate, which is a defined term in the judicial code. And the state did not dispute that. They acknowledged that before the district court that he is a judicial candidate, that he is subject to the code. So he isn't actually running for anything? He wishes to. He desires to seek judicial office, but the problem is Mr. Platt. Are there judicial elections this year in Ohio? There are every year. We either have local municipal courts or common pleas courts elections. I think it would be safe to say from the complaint in the briefing that we read into that that he wanted to run and was running. That's why he formed a candidate committee for this year. So you don't have to tell me why he didn't run. I don't think that makes any difference. But I am just curious what both of your views are. If somebody just simply files a campaign committee and says, well, I'd like to run sometime in the future, is that really sufficient for standing? Because you could have somebody that is, you know, just likes to challenge state regulations, has no intention of ever running, but simply says, well, I formed a committee and maybe I'll run in the future. I'm not sure they're standing there. I believe there is standing because by his act of forming the judicial campaign committee, which still exists today, which still desires to raise campaign funds but cannot because of the judicial canons. He has to be a candidate and it has to be a certain amount of time before the election. Correct. But under Rule 4.6, I forget the subdivision there, a judicial candidate is defined essentially as one who has publicly declared that they are going to seek judicial office, has filed the requisite designation of treasurer form with the local election officials, and there's a third criteria. He is in that. He has filed it. What does it say? That committee just lasts indefinitely? In theory, yes. Ever? In theory, yes. But I think if you look at the timing of this case, we filed this case in June of last year saying, hey, he's looking and would like to run for judge in 2014. We filed the case in June. We had oral argument before Judge Barrett in August. We didn't get a decision on our preliminary injunction until January 3rd, which is 30 days before the filing deadline. Mr. Platt falls into that category that Judge Sutton talked about that these canons favor. The canons favor incumbent judges over non-incumbent judges. He's non-incumbent judges. It favors well-to-do candidates who can finance their own campaigns over those who are not well-to-do. Mr. Platt, I think, is not well-to-do. He cannot finance his own campaign. It benefits the well-connected, those who have the network through party apparatchiks or whatever to engage in political activities. He's not well-connected. So he sought and desires to run, but he wants to be in a position to be strong going to the party, going to people saying, I've been able to raise money, I've been able to get support. Run by me the precise language again about declaring yourself a candidate. I mean, how does somebody declare oneself a candidate for anything by forming a committee? Because when they form the committee, the campaign committee, they are in the mode of operating to get campaign funds. Mr. Pirman, what date did you say that committee was formed? It was in June of 2013. So read the part about declaring yourself a candidate for us. By definition, it's within the rules. I got that. I just want to know precisely what it says. Did you say that was 4.6? 4.6 is the definitional section. Give me half a minute here, Your Honor. You know, I noticed that his light is not on. Is it work? Is it? Yeah. This is 4.6F of the judicial canon. Judicial candidate means a person who has made a public announcement of candidacy for judicial office, declared or filed as a candidate for judicial office with the election authority. Could you stop as you go through each one of those and tell us whether you believe that your client has done one or more of these things? Yes, Your Honor. I think a person who has made a public announcement of his candidacy for judicial office, I think he has essentially by 5. How does one announce candidacy for judicial office without announcing what office one seeks? Which judgeship was he running for? He was looking to run for a common pleas court judgeship in Hamilton County. And how does one announce that? Any particular way, a press release? I think that could do it. What did he do there? Going to a political party meeting, announcing at a central committee meeting. What did he do here aside from filing the lawsuit? I think that's how he satisfies the first requirement. Second requirement under that definition is declared or filed as a candidate for judicial office with the election authority. Did he do that? He did that. You file with election authorities by not pulling a petition for a particular race? How does one file? I don't know of any election authority one files with other than by filing a petition or some other declaration of candidacy for a particular position. You file a designation of treasurer form which forms the campaign committee. So you're saying that number two, he filed for office by virtue of having filed, formed a committee. Designation of treasurer form and it's attached to the complaint. What else does he claim he did? He did that and that's what caused him to fall within the ambient of being a judicial candidate. Well, obviously you can tell we're skeptical that forming a campaign committee is filing for office. That doesn't seem intuitively correct, but we got what you said. And the state of Ohio agrees with that interpretation. There's a designation of, well, I mean, yes, but if it's a standing issue, we have some independent interest appropriately in whether he's met it. I assume that there are various, there's not one common pleas judge for Hamilton. That is correct, Your Honor. And presumably they sit in divisions or parts of court. For particular seats. Mr. Hartman, don't put that away. You gave two options there under F. Are there more? The third is, or authorize the solicitation or receipt of contributions or support for judicial office, whichever occurs first. He's not done that because he can't do that because the... Bottom line, you say he's complied with two out of three of these things because he filed a complaint, which is what you say satisfies the announcement, and he's declared for office because he formed a committee and designated a treasurer. That's it. I think the second one is really the gist, and that's what the issue, because Judge Barrett questioned that below, too. That's all I wanted to know. He filed the designation of treasurer form. The state of Ohio agrees. It doesn't say anything about the position. It says common pleas court. It does not identify the particular seat. Does it identify the election, in other words, 2014? I do not believe the form does.  Is the form in the record? It is. It's attached to the complaint. All right, so if the form is in the record and he designated it for 2014 and then he didn't run, then obviously that doesn't help you. No, but the complaint also, we do make the clear allegation that even if he does not run there, he does desire to run beyond that for judicial office, which the courts and the Supreme Court repeatedly have said that that is sufficient to give standing, especially in the First Amendment context. And what case should we look at to tell us that, for the Supreme Court? I cannot cite you one immediately on that. I mean, I can supplement the record for the court if it desires. All right, I've distracted you considerably, but I think importantly. No, no, standing is always the important issue here. But like I said, I think he has clearly crossed the threshold to be subjected to the rules. He desires to engage in conduct that would violate the rules. I mean, he wants to endorse other candidates for public office, including judicial candidates, yet the rules say you cannot publicly endorse them. Well, certainly he's not restricted in any way from doing that at this point by virtue of his – I can't imagine that he's restricted by virtue of forming a campaign committee from doing that. Your Honor, he is restricted. He is restricted by the judicial candidates that we are challenging here. He also wishes to be able to solicit to try to build support. So wait a minute. Isn't – you've said there is a – when you want to run, there's a form that you fill out independent of the campaign. The campaign committee is just so you can raise money. If you want to be a candidate, you've got to file something with the appropriate authorities that says that you're running for Office X, right? You can file a designation of treasurer, which forms the committee. Then ultimately you would file the petitions to run and actually get your name on the ballot. To get on the ballot to run, you've got to file something, in this case petitions. Correct. To raise money, if you're going to spend more than a threshold, you have to have a campaign committee. $1,000. If you're not going to file more – if you don't intend to raise more than $1,000, you don't even have to have a committee. Correct, under Ohio law. Is your position that your client sought to raise funds outside of the prescribed time limits in order to see if he could raise enough money to become a viable candidate? Exactly, yeah. He wanted to be able to go to the party and say, I've raised money, support me, and figure out which vacancy on the court to go for. And you're saying he was deprived of that opportunity because of the restrictions on cabining the fundraising activity? The 120-day limit. To a certain time frame. Correct. Is that what you're saying? And he was also restricted because he wasn't well-connected, et cetera. He couldn't go personally solicit to try to raise those funds. I see my time is up, Your Honor. Thank you. Mr. Keller. May it please the Court. Zachary Keller on behalf of the State Defendants. Judicial elections differ from legislative elections, and the state has a compelling interest in regulating judicial campaign speech to assure the reality and appearance of an impartial judiciary. You agree that strict scrutiny is what's in play here, is that correct? For two out of the three groups of provisions in question, the personal solicitation and the endorsement and political speech-making following Kerry, but not the time limitations, I think, under Gable and Spears. Those would fall under the Buckley standard. Ohio has acted consistently with the guidance of Kerry. Keller, you've just heard us spend 15 minutes with your opposing counsel talking about standing, and while you may or may not agree with standing, that also arguably implicates ripeness and moodiness. Did you mention anything about this, or did we just waste 15 minutes because the state agrees he has standing, it's ripe, and it hasn't become moody? No, Your Honor, I don't think you just wasted 15 minutes. And as Judge Gibbons acknowledged, this court has an independent duty to determine Article III requirements. If you look at it, it is Rule 4.6F. It sets three different ways you can become a judicial candidate, and that's when enforcement of these provisions kicks in, and that's public announcement for candidacy, declaring or filing for candidacy, or authorization to solicit funds. And to our knowledge, the only thing that Mr. Platt has done has been to open the campaign committee and to designate a treasurer. And is that campaign committee designation applicable to a specific election, or does it continue on and could be viable in subsequent elections? I don't believe it's applicable to a specific judgeship or a specific year election. I think you can keep them open if you so choose. So do you agree that he had standing and the case was ripe and has not become moot? We did not challenge in the preliminary injunction level whether he was a judicial candidate. We assumed without sort of a novel issue of whether if you just open a campaign committee but then don't do anything else. Can you perhaps help me? I mean, you obviously made that decision based on something. Perhaps you can help me with a Supreme Court case that so clearly establishes his standing in this context that your adversary could not summon up. I would point the Court to I think the Supreme Court's recent guidance in Susan B. Anthony might be helpful for this case. It was regarding pre-enforcement standing. But I do want to return to Judge McKeague's point about rightness. I do think— Susan B. Anthony doesn't involve candidate. It does involve those issues that you referred to, but it's not really an analogous situation, is it? No, I'm not aware of a particular candidacy case. Well, it's really the companion case to Susan B. Anthony where that group said that they wanted— they didn't actually run afoul of the problems, but they said they wanted to take these positions in connection with candidates in future elections. That's correct. So that's what you're referring us to? Yeah, I'm referring that that might provide guidance to the Court in this situation. Okay. And I do want to return to the rightness issue. Certainly at this point, regardless of what was at play at June 2013, I do think there's an issue that we don't know. We just heard a concession that there won't be any run for candidacy in 2014, and the declaration deadlines for both independent candidacy or a partisan candidacy have passed. So we don't know what the factual circumstances are going to be, so I do think it's asking a very abstract question of this Court at this point. And I also do think that although we're before the Court on a motion for urgent relief and opposing counsel has moved to expedite, I don't think that the State Defendants agree that there's any urgency here because nothing is going to happen in 2014. Moving to the merits, Ohio has a compelling interest in judicial impartiality and the appearance of judicial impartiality. This Court holds so for Kentucky and Cary, and every Court of Appeals to consider the issue since White has held that these are State compelling interests. And in 2009, the Supreme Court made clear in Caperton that judicial integrity and the preservation of the public's confidence in the judiciary is a State interest of the highest order, and that the States can use the canons of judicial conduct as their principal safeguards to prevent judicial abuse. In this case, Ohio's Code carefully balances the compelling interest in this area with the need for preserving First Amendment rights. Ohio focuses in on three particularly threatening areas to judicial impartiality. Intimate one-on-one solicitations, the political entanglements that arise from public endorsements and political speech-making on party stump speeches or on behalf of a candidate, and also the erosion of public confidence that could come from a never-ending campaign solicitation cycle. I'd like to start with Rule 4.4a, the personal solicitation provision. This was most directly at issue in Cary. Ohio has amended in response to Cary its Rule 4.4a. It strikes at the most intimate forms of solicitation that cause the greatest risk of undue pressure, as well as the appearances of quid pro quo exchanges. Ohio's amendments were drawn directly from Cary. It amended its code to allow for the group speech-making and the mass mailings that Cary did not feel raised the same level of concerns while focusing in on those intimate forms of personal solicitation. And I'd also point the court to the en banc panel of the Eighth Circuit in Warsaw, which upheld a nearly identical Minnesota code. The second set of provisions at play are the political endorsement and partisan speech-making provisions within Rule 4.1a. I would first point out that Ohio is in the clear consensus in this area. Forty-six other states, as well as the District of Columbia, have identical or substantially similar provisions. The federal canon 5a prohibits federal judges, as well as nominees, from engaging in this type of conduct. And actually, federal canon 5c has an even broader prohibition on political activity for federal judges. This issue was also considered by the Warsaw court in the en banc panel in the Eighth Circuit, as well as the Seventh Circuit in Seaford and Bower, the District of Kansas in Yost, the lower court here, the lower court in Wolfson, and the highest courts of New Mexico and New York have all upheld as constitutional similar provisions. The only court going the other way is the Ninth Circuit's decision in Wolfson. Wolfson cited no support for going that way. Do you think there's a difference between how these rules are applied to candidates versus incumbent judges? I don't think so, Your Honor. I think the logical starting point for application of the state's compelling interests are candidacy, because rules have to be applied in the aggregate, and we know that non-sitting judges will become many, that there will be many non-sitting candidates that will become judges. Are you at urges to follow the Third Circuit's approach on that? I would urge you, the only circuit I know that has made that distinction is the Ninth Circuit, and I would urge you to reject that Ninth Circuit distinction. And even the Ninth Circuit seemed to recognize that the compelling interests still apply. They ruled on the narrowly tailoring grounds, and we think basically for the reasons that were enunciated in the dissent in that case that they were incorrect. They didn't provide us a logical starting point for the interests. Well, the dissent didn't seem to really take issue with the fact that the rules apply differently to candidates versus incumbent judges. I think the dissent was asking, it talked about it in the form of least restrictive means, but it did say that where the decision erred was it failed to provide a starting point for the regulation. I would point the court to three pieces of authority on the idea that things that happen before one takes the bench and puts on the robe still can affect the public's appearance and the judicial impartiality. Caperton recognized that candidacy activity could rise to the level of a due process violation once someone took the bench. Buckley, in the federal election context, recognized that both incumbents and challengers needed to be regulated for the purposes of the appearance of corruption. And then the federal canons, if you look at the commentary to Canon 1, make clear that they apply to both federal judges and nominees or provide guidance for both of those categories. So the idea that, especially from a public perception standpoint, the idea that everything that happens during the candidacy is merely washed away by taking an oath, I think is an unrealistic standard, and that's why regulation needs to start at the candidacy stage. I don't want to go back and reopen a can of worms here, but all of a sudden it occurs to me, thinking more about our prior discussion about standing ripeness and mootness, this is here in connection with a preliminary injunction. It's not really here on the merits, except insofar as we look at likelihood of success on the merits. So hasn't the whole issue of injunctive relief that's before us become moot by his decision not to run? Your Honor, we would certainly agree that there's no urgency. Say we affirm the denial of injunctive relief, and we actually speak at length on the strong likelihood of success in doing so. Does that end the case if we rule in your favor on that, or does it still go back to Judge Barrett anyway? It would still go back for an ultimate decision, but I think that... A merits decision. A merits decision, absolutely. But in the normal First Amendment context, the likelihood of success tends to be the controlling factor. But I do agree with Your Honor's point that if there is no urgency here, then is preliminary injunctive relief actually justified at this point? And the State Defendants would certainly agree that there is no... So we could say that there's no likelihood of irreparable harm and send it back for a full merits discussion because he didn't file and he's not running this time. I think under the special circumstances of this case, this might be one of those exceptions in a First Amendment case where it isn't completely controlled by the first factor because of the odd circumstances. How would you sort of handle... If we're talking about this hypothetical scenario and we've got all these cases that talk about the fact that it's a First Amendment case, is there some wiggle room in the existing case law that would, you think, point us in this kind of context toward emphasizing other factors more? Your Honor, absolutely. I think the courts that tend to point out the standard as it being controlled by the first prong of the preliminary injunctive test tend to leave a little bit of wiggle room. I believe the language usually largely controls the injunctive decision. So I think this might be a special case where the other factors and just the lack of urgency for relief might be able to resolve the opinion, the balancing of those factors. And, of course, these issues of the standing, rightness, and so on go very much to whether he can prevail on the merits. I mean, they're preliminary questions for the court, but they're very pertinent to the first factor. I think we can assume that Mr. Herman is going to stand up and say, well, he wants to run anyway, he wants to raise money early, he's thinking about running in 2016, so he wants to start raising money right away, really before even the intermediate election is over. So to just get you on record, what's your position on that? I think it all goes to whether, under the language of Rule 4.6, he is a judicial candidate. We did not dispute that at the lower level. Opposing counsel is certainly right about that. But I do think, especially the longer the campaign committee remains dormant, I think the more questions become, is he truly a candidate within the sense of? When would he have had to file if he were going to seek a judicial position in 2014? There are three different deadlines, Your Honor, to make it on the ballot. I believe it's 90 days before the partisan election, a day before if you're going to run as an independent candidate, and then I do believe there is one deadline that has not passed, to run as a write-in candidate. I think that's in late August. That's for judicial elections? Yes, for judicial elections. The filing, just to point the court, the filing requirements are in Revised Code, Chapter 3513. But you mentioned partisan elections. I thought the elections were nonpartisan. The partisan primary, I'm sorry. The partisan primary, I see. I'm sorry, 90 days before the partisan primary, and then a day before if you want to run as an independent. Explain to me, run by me again, what you just said about the partisan versus nonpartisan nature of the judicial election. Ohio has a split system. The primary judicial candidates can run as a partisan for the partisan endorsement, and then at the general election, the ballots do not announce party systems. Oh, so you're like a Democratic or a Republican nominee who has no future life except a place on the ballot? No, Your Honor. Ohio doesn't restrict, and this is actually at issue in Cary. Ohio does not restrict party affiliation. It's just it doesn't appear on the ballot. You're a partisan until the day after the primary. It's the same thing Michigan does for the Supreme Court, but not other judicial races. For the purposes of the ballot, yes, although a candidate can continue to run as a Republican, Democrat, or other party candidate. So the person is still the Democratic nominee or the Republican nominee, but the ballot just doesn't list them as Democrats or Republicans. That's my understanding, Your Honor. And there's no restriction as far as campaign literature announcing positions or affiliations with parties publicly. Is that correct? No, Ohio does not prohibit party affiliation announcements. So all Mr. Platt would theoretically be currently restricted from doing is raising money in connection with a write-in campaign that would have to be mounted within the next two or three weeks, right? I see that my time's up. May I answer the question? I do believe that's correct, Your Honor. So it would be appropriate for us to ask him whether he intends to run as a write-in then, right? I think that would be a proper question. When you all had the hearing on the preliminary injunction, there was probably no reason to challenge standing because he'd formed a committee and he was saying he wanted to be a candidate. I mean, perhaps he would have brought it up sooner. Have all the filing deadlines that have passed passed between the January preliminary injunction ruling and the present time? I believe that's correct, Your Honor, yes. And I agree that there was less reason to doubt in June 2013 that he would be running as a candidate. Well, the complaint said he was going to run. Exactly. The only one left is the write-in deadline, right? Yes, to run as a write-in candidate. And he can announce the day before the general election? No, I believe that there is a deadline, and I think it's in late August. I believe that's in Chapter 3513 of the Code, Your Honor. Okay, thank you. All right, Mr. Hartman. So pretty simple, Mr. Hartman. Does your client intend to run as a write-in candidate? He may after today, Your Honor, but I don't know. I've not talked to him about that. The issue he had was he wanted to go to the party, whichever party he's in, convince them he was a credible candidate so they could back him. None of the reasons why you say this is a problem for your client applies to being a write-in candidate. Is that a fair statement? No, because he would still need to raise money. And he'd be up now against both the Democratic machine and the Republican machine. So it's complete speculation as of today whether he will or won't run. There is nothing in the record, and I cannot represent to the court one way or the other. Fair enough. In terms of I think the Susan B. Anthony list case, and I know, Judge Gibbons, I think you were on one of the panels on those cases. I was on the Coast. And I was one of the attorneys in the case. I think the court's questions earlier were kind of leading along the lines that this circuit followed in Susan B. Anthony, kind of the Fieger, Grendel, Morrison questions. And I think in light of the Susan B. Anthony decision from the Supreme Court, it's the way that the panel applied them in Susan B. Anthony was clearly incorrect in that there was standing I think Coast in the Susan B. Anthony list case who declared a desire to engage in speech but never engaged in the speech because of what was going on against Susan B. Anthony had standing. And so I think that Susan B. Anthony or the companion case, it may be applicable. I think we've requested supplemental briefing in the Coast case, and I'm not sure if we've gotten the briefs yet. I haven't seen them. You've got a joint motion to remand right now. Let's assume that there was standing and still is standing in terms of the merits of this case. Why are we considering ourselves with a decision on preliminary injunctive relief given that for whatever reason your client chose not to engage in the election process for 2014? Because one of the things we are still challenging is an inability to publicly endorse other candidates for office. But he's not a candidate. He is a judicial candidate under the judicial canons. He wishes to endorse another judicial candidate. How can he be a candidate? I understand that he takes certain actions and he becomes a candidate. We've questioned whether he actually did that, but let's assume he did. He then doesn't take the necessary subsequent predicate. Maybe that's an oxymoron. Steps. He surely, because he thought about being a candidate once, doesn't mean he's a candidate forever. He didn't take the remaining steps necessary to continue this candidacy. So why are we addressing? Why do we have to take it up in the preliminary injunctive phase, which is not our best forum here? I understand that. Because he does desire, the complaint, the verified complaint clearly indicates that it's either in 2014 or in the subsequent elections. There's very little that separates your client from the lawyer who sits around and says, oh, I think I'd like to be a judge someday. I mean, you know. But that lawyer is not subject to the Ohio Code of Judicial Conduct. It sounds to me that what you're saying is once he's filed that declaration with whoever it is, is it an election commission? Board of Elections. Board of Elections. That that lasts in perpetuity and so these regulations govern him for the rest of his life unless he withdraws it. Until that committee is terminated and there's a separate form that you can file with the Board of Elections to terminate a campaign. Regardless of his actual intent to run or not. In that particular year? Correct. Go ahead. Well, so what you're saying then is that once that's filed, he can never endorse another candidate for judicial office if he ever intends to pursue it or he just can't do it. Otherwise, he'd be subject to some sort of discipline. The latter. If he does it, he's subject to discipline. This doesn't make any sense. Do you have any authority that says once these deadlines have gone by and he didn't actually do what he was required to do, that he is then, there's any real threat of prosecution by anybody simply because he has this existing committee that sounds to be, one, never did anything to begin with, and two, is dormant? Firstly, Your Honor, it's not a dormant committee. It's an active committee. As members? Other than him? Well, Your Honor, in Ohio, there's this nebulous concept of a campaign committee, a political action committee, and I do election law regularly. There's no concept as to who is or is not a member of any of those committees. So he just said he formed one, but this is not an actual group of people who have meetings? I've been involved in campaigns for 20 years. Campaign committees have never had meetings in my campaigns. You have the campaign manager managing the campaign, but you don't have this campaign. Does he have a campaign manager? He has a campaign treasurer. So you have him as the possible candidate and you have a person he's designated as treasurer? Treasurer. Has the treasurer ever done anything? He's filed the requisite annual report. Okay. Filled a form and he signed it. Correct. So, again, the question goes back to why should we be addressing this in the context of preliminary injunctive relief given the subsequent events that occurred after he filed his complaint? I understand the question. It has to go back anyway, doesn't it, to Judge Barrett for the merits? Apparently it's going to. A preliminary injunction doesn't end the case. No, but the issue really, and I'll get back to your question, Judge, is the burden is upon the state to justify these actions, and all they've ever offered has been ips and dicks. They've put no evidence in the record. But your whole argument that they have to come forward with evidence is predicated on they have to come forward with evidence at the preliminary injunctive phase or they never can in the future in the case, and that can't possibly be right. So your whole argument about they didn't come forward with evidence is really directed at the trial phase. So by definition, you're saying that's still got to happen. They just haven't done it yet. So you should get an injunction until that happens. So you're saying it's got to go back. So why are we screwing around? Because, you know, even the court in, I think, Elrod, the Supreme Court in Elrod, that even temporary restrictions or violations of constitutional rights is irreparable harm. Well, I gather that as far as this record indicates, your client has not done one single thing to position himself to be a candidate for office  I think, yes, but I think the issue, you've got to, again, go back to the timing of our action. Because we filed it in June, seven months before when he could start raising campaigns, eight months before the filing deadline. Has he done anything he could do as a, you know, if he were a candidate subject to the restrictions to further his candidacy, either before or after? There's nothing in the record. It would be speculation on my part, my understanding. Well, there's nothing. I mean, the only thing that you're able to show at this point that he's done is the two things you've told us, forming a campaign committee, which appears questionable as far as its actual existence, and he's designated a treasurer. Correct. In the record, that's the indication. Has he gone to public? And he filed a complaint, which you're using as the announcement. And that's not the strongest argument. Serious announcement, but an announcement nonetheless. It's a public pronouncement. There's a public aspect. He hasn't gone to meetings. He hasn't gone out to shake people's hands. He hasn't done any of those things as far as we know. Because he's not incumbent. He's not a well-connected.  They go out and they talk to people. I mean, we all have. I mean, connection is connection. But in terms of the party apparatchiks, he's involved in parties. He's involved in organizations, yes. He's got connections. The reality of the situation is that most people who become federal judges have a little bit of prior experience in the political arena, and they sort of know how this works. I understand. But again, I think you look at the timing. He wanted to be able to go up. Okay, well. Can I take the unusual step of asking Mr. Keller a question? It's very unusual, but I'm sure you can. I think we've prolonged your stay at the podium beyond its normal. I understand that. If I may just make one final comment, Your Honor. Yes, yes. The issue, again, I think it goes back to the timing. He wanted to be able to raise money in order to present himself as a strong candidate. He was not able to do so. We didn't have a decision on the preliminary injunction until January 2nd or 3rd, which was just 30 days before the filing deadline, which was just the start of that 120-day period. As far as we know, though, he did nothing else to further his candidacy during that period. I mean, if the district court were to consider it, he might be able to establish all of his actions to further his candidacy. But I think as politicians, campaigns take money. I didn't say we were politicians. I said we could. There you go. Thank you, Your Honor. Important distinction. It's an important distinction. Yes, yes. Basically, he's now saying, well, we still need to pursue preliminary injunctive relief because he's subject to these restrictions today and can't do certain things that he wants to do. It seems to me the law is that we look to see is there a realistic possibility of prosecution. So can you commit the state of Ohio, one way or the other, as to whether given that these deadlines that he had to meet have passed, it's only possibly he could file as a write-in, does the state of Ohio have any possibility of prosecuting him if he does things like endorse candidates and speak on behalf of candidates? I don't think I have authority to commit one way or the other, Your Honor. Fair enough. Can I follow up with that? Sure. You've lost control anyway, right? Is it fair to read the rule that restricts political endorsements to those people who are actual candidates as opposed to only inchoate candidates who have filed a declaration but have done nothing more after the deadlines have passed to run in an election?  Well, I think it all comes down to how you read 4.6F. Thank you. All right. Well, we appreciate the argument that both of you have given, and we will consider the case carefully. Despite the levity at the end, I mean it's obviously an important issue that's worthy of our serious consideration. We will certainly give it that. Thank you.